IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES RUSSELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:19-cv-874-S |
| | § | |
| EMBRAY EUGENE HALL, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff James Russell filed a Motion for Default Judgment against Defendant Embray Eugene Hall. *See* Dkt. No. 27. United States District Judge Karen Gren Scholer referred the motion to the undersigned United States magistrate judge for Findings, Conclusions, and Recommendation. *See* Dkt. No. 29.

For the reasons explained below, the Court should grant Plaintiff's Motion for Default Judgment [Dkt. No. 27] as to liability and, based on an evidentiary hearing that the undersigned held, damages.

**Background**

On February 4, 2019, Plaintiff James Russell sued Defendant Embray Eugene Hall (and Liberty Mutual Fire Insurance Company, who has been dismissed as a defendant in this suit) in state court for damages that Russell suffered during a car accident on February 8, 2017. *See* Dkt. No. 19 at 2. The case was removed to this court in April 2019. *See* Dkt. No. 1.

According to Russell, Hall failed to control his speed and collided into Russell's vehicle when it was stopped at a red light on 6000 Bonnie View in Dallas. *See* Dkt. No. 19 at 2. Russell alleges that Hall's negligence proximately caused the car accident and resulting damages, including "serious and extreme personal injuries" to Russell. *Id.* at 2-3. In support of his negligence allegation, Russell contends that an investigating officer cited Hall for failing to control his speed, causing the wreck, having no valid driver's license, and failing to maintain financial responsibility. *See id.* at 2. Russell alleges that Hall committed negligence per se by driving without a driver's license and without valid financial responsibility. *See id.* at 3. Additionally, Russell alleges the following negligent acts and omissions by Hall:

      a.  failing to timely apply the brakes;

      b.  failing to keep a proper lookout;

      c.  failing to turn his automobile to avoid the collision;

      d.  taking faulty evasive action;

      e.  failing to control his speed; and

      f.  driving at an unsafe speed.

*See id.*

Russell seeks unliquidated damages, interest, and court costs from Hall. *See* Dkt. No. 27 at 2. Russell seeks the following unliquidated damages:

      a.  past and future medical expenses;

      b.  pain and suffering;

      c.  past and future physical impairment;

      d.  mental anguish;

      e.  loss of household services;

      f.  property damages;

      g.  interest; and

      h.  court costs.

*See id.*

After being served with summons and a copy of Russell's complaint on April 18, 2019, Hall "did not file a responsive pleading or otherwise defend the suit." Dkt. No. 27-1. In September 2019, the Court ordered Russell to move for entry of a default and a default judgment against Hall. *See* Dkt. No. 26. Russell filed a combined Request for Entry of Default and Default Judgment, *see* Dkt. No. 27, and the Clerk issued an Entry of Default against Hall on September 12, 2019, *see* Dkt. No. 29.

Russell now seeks entry of a default judgment against Hall and requested a hearing to determine the amount of damages. *See* Dkt. No. 27. The undersigned held the hearing by video teleconference on October 20, 2020. *See* Dkt. No. 38.

## Legal Standards

When a defendant has "failed to plead or otherwise defend" an action, the Court may enter a default judgment if the plaintiff establishes the following prerequisites: (1) the defendant was served with the summons and complaint and default was entered; (2) the defendant is not "a minor or incompetent person"; and (3) the defendant is not in the military. FED. R. CIV. P. 55(b)(2); *see also* 50 U.S.C. § 3931(a), (b) (providing "[p]rotection [for] servicemembers against default judgments").

Additionally, the plaintiff "must make a *prima facie* showing of jurisdiction." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 325 (5th Cir. 2001).

The United States Court of Appeals for the Fifth Circuit requires a three-step procedure for obtaining a default judgment: (1) default by the defendant; (2) entry of default by the Clerk of the Court; and (3) entry of default judgment by the district court. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (defining "the terms regarding defaults"). "A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *Id.*

Even though the Fifth Circuit favors resolving cases on their merits rather than granting default judgments, this preference is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial court's discretion." *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999). In consideration of these competing preferences, the Court takes a two-part approach in determining whether to grant entry of default judgment. *See Nishimatsu Constr. Co. v. Houton Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (requiring a "sufficient basis in the pleadings for the judgment entered"); *see also Lindsey v. Price Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (stating "relevant factors" in determining whether default judgment is appropriate).

First, the Court considers the following six non-exhaustive factors to decide whether default judgment is appropriate: (1) "whether the default was caused by a

good faith mistake or excusable neglect"; (2) "whether there has been substantial prejudice"; (3) "the harshness of a default judgment"; (4) whether there are "material issues of fact"; (5) "whether the grounds for a default judgment are clearly established"; and (6) whether the Court would be "obliged to set aside the default on the defendant's motion." *Lindsey*, 161 F.3d at 893. Default judgment is appropriate when a defendant fails to answer or otherwise respond to the pleadings or court orders. *See McGrady v. D'Andrea Elec., Inc.*, 434 F.2d 1000, 1001 (5th Cir. 1970) (upholding a default judgment due to Defendant's "delay and failure to comply with court rules").

Second, the Court must assess the merits of Plaintiff's claims and find a "sufficient basis in the pleadings for the judgment entered*." Nishimatsu*, 515 F.2d at 1206. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must "contain a short and plain statement of the claim showing the pleader is entitled to relief." FED R. CIV. P. 8(a)(2). This requirement "give[s] the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). By defaulting, the defendant is deemed to admit "the plaintiff's well-pleaded allegations of fact" and is not deemed to "admit allegations that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206. The factual allegations, assumed to be true, need only "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. Detailed allegations are not required, but "the pleading must present more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

- 5 -

"A default judgment … establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir.1987). "[I]n the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing … [except] where the amount claimed is a liquidated sum or one capable of mathematical calculation." *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *Id.* at 311. Thus, affidavits submitted to support a claim for mathematically calculable damages "must be sufficiently detailed to establish necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

## Analysis

The undersigned recommends that the Court grant Plaintiff's Motion for Default Judgment [Dkt. No. 27] as to liability and, based on the October 20, 2020, evidentiary hearing, damages, interest, and costs of court.

I.   Jurisdiction

First, Russell has made a *"prima facie* showing of jurisdiction" for the Court to decide this matter. *Sys. Pipe & Supply, Inc.*, 242 F.3d at 325. This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a)(1); *see also* Dkt. No. 19 at 1 (alleging that

Plaintiff and Defendant "are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs").

II.  <u>Requirements for a Default Judgment</u>

Additionally, Russell has satisfied the prerequisites and procedural requirements for obtaining a default judgment. *See* FED. R. CIV. P. 55(b)(2) (stating prerequisites for entering a default judgment).

First, Russell showed that "[o]n April 18, 2019, the summons and complaint were served on Defendant Hall." Dkt. No. 27 at 1. The summons instructed Hall to respond to Russell with an answer or motion and file it with the court "within 21 days after service of this summons." Dkt. No. 27-3. The summons also warned Hall that "if you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint." *Id.* Despite this warning, "Hall did not file a responsive pleading or otherwise defend the suit." Dkt. No 27-1. Accordingly, the Clerk's office issued an Entry of Default [Dkt. No. 28] against Hall.

As to Hall's military status, Russell's attorney, Kirk Mathis, swore in an affidavit in support of the request for default judgment against Hall that "Plaintiff is unable to determine whether Defendant, Embray Eugene Hall, is in the military." Dkt. No. 27-4; *see also* 50 U.S.C. §§ 3931(b)(1)(B) ("[T]he court, before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit ... if the plaintiff is unable to determine whether or not the defendant is in military service...."). Additionally, Russell asserts that "Defendant is not a minor or an incompetent person." Dkt. No. 27 at 2; *See also* FED. R. CIV. P. 55(b)(2) ("A default

judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.").

Regarding the *Lindsey* factors, a default judgment is appropriate based on the evidence. *See Lindsey,* 161 F.3d at 893 (stating factors to determine whether default judgment is appropriate).

(1) First, there is no evidence that Hall's failure to respond or defend himself is a result of a "good faith mistake or excusable neglect." *Lindsey,* 161 F.3d at 893.

(2) Second, Hall's failure to respond threatens to halt the adversary process, which prejudices Russell's interests in pursuing his rights. *See id.* at 893 (stating "substantial prejudice" factor).

(3) Third, Russell seeks only the relief that "he may be entitled to under Texas law." Dkt. No. 19 at 3; *see also Lindsey,* 161 F.3d at 893 (stating "harshness" factor).

(4) Fourth, there is no dispute of the facts where Hall, "by his default, admits the plaintiff's well-pleaded allegations of fact." *Nishimatsu*, 515 F.2d at 1206; *see also Lindsey,* 161 F.3d at 893 (stating "issues of fact" factor).

(5) Fifth, the "grounds for default are clearly established," as Hall failed to show cause as to why a default judgment should not be entered against him. *See Lindsey*, 161 F.3d at 893.

(6) Finally, based on the facts known to the Court, there is no "good cause" for which the Court would be "obliged to set aside the default on the defendant's motion." *Id.* at 893*; see also CJC Holdings v. Wright & Lato, Inc.*, 979 F.2d 60,

64 (5th Cir. 1992) (upholding district court's grant of default judgment when defendant failed to respond to summons within 40 days).

Hall had five months to obtain counsel, respond to Russell's Amended Complaint [Dkt. No. 19], or communicate with the Court in order to prevent a default judgment. *See* Dkt. No 27 at 1 ("On April 18, 2019, the summons and complaint were served on Defendant Hall."). But Hall did none of these things. *See id.* ("Defendant did not file a responsive pleading or otherwise defend the suit."). And, so, entering a default judgment against Hall will be consistent with "social goals, justice, and expediency." *Rogers v. Hartford Life & Acc. Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999).

III.    Sufficiency of the Complaint

Regarding Russell's negligence claim, the allegations provide a "sufficient basis in the pleadings" for a default judgment against Hall. *Nishimatsu*, 515 F.2d at 1206.

Under Texas law, a negligence claim requires: (1) "a legal duty owed by one person to another"; (2) "a breach of that duty"; and (3) "damages proximately caused by the breach." *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). In a personal injury case, "the plaintiff typically alleges that the defendant's conduct caused an event ... [such as] an automobile accident ... and that this event caused the plaintiff to suffer injuries for which compensation in damages should be paid." *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 732 (Tex. 1984). A default judgment conclusively establishes the defendant's liability that the defendant's conduct proximately caused "the event upon which suit is based." *Id.* But "whether

the event sued upon caused any injuries to the plaintiff is another matter entirely" and is part of proving the amount of damages to which the plaintiff is entitled. *Id.*

In this case, the event being sued upon is the February 2017 car accident. *See* Dkt. No. 19 at 2. Thus, at issue is whether Russell's allegations sufficiently establish Hall's liability in that Hall's actions proximately caused the February 2017 car accident.

The allegations of Russell's complaint establish Hall's liability as to the car accident where: (1) Hall owed Russell a duty of care to operate his vehicle safely; (2) Hall breached that duty because he "failed to control his speed and collided into Russell's vehicle"; and (3) Hall's breach proximately caused the automobile accident. *Id.* Hall did not appear or respond to any pleadings and thus, "by his default, admits the Plaintiff's well-pleaded allegations of fact." *Nishimatsu*, 515 F.2d at 1206. Russell's allegations provide a sufficient basis for the negligence claim against Hall regarding liability for the car accident.

IV.  <u>Damages</u>

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages." *U.S. For Use of M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). "Accordingly, it remains Plaintiff's burden to provide an evidentiary basis for the damages it seeks." *Geiken v. Worku*, No. 3:15-CV-2442-B, 2017 WL 1709692, at *8 (N.D. Tex. May 2, 2017). Under Texas law, "[w]hen someone suffers personal injuries,

the damages fall within two broad categories – economic and non-economic damages." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 763 (Tex. 2003).

At an evidentiary hearing, Russell provided affidavits, medical records, and testimony to support awards of economic and noneconomic damages and court costs. *See* Dkt. No. 39. To avoid causation issues with a different car accident Russell experienced in May 2017, Russell agreed that the time period for damages is restricted to the time period between February 8, 2017 and May 17, 2017. *See id.* at 26. Considering Russell's testimony and supporting affidavits, the Court finds that Russell is entitled to the following awards: (1) $16,350.00 for economic damages; (2) $35,000.00 for noneconomic damages; (3) $1,198.93 in court costs; (4) prejudgment interest of $4,642.60; and (5) postjudgment interest at a rate of .114 percent per annum – totaling $57,191.53, plus postjudgment interest.

A. Economic Damages

Regarding economic damages, Russell provided sufficient evidence to support an award of $7,850.00 in medical expenses and $8,500.00 in lost wages. "Traditionally, economic damages are those that compensate an injured party for lost wages, lost earning capacity, and medical expenses." *Golden Eagle Archery*, 116 S.W.3d at 763. "In a personal injury case, a claim for past medical expenses must be supported by evidence that (1) the plaintiff's injuries were caused by the defendant's negligence, and (2) the medical treatment was necessary and the charges for that treatment were reasonable." *Ten Hagen Excavating, Inc. v. Castro-Lopez,* 503 S.W.3d 463, 490-91 (Tex. App. – Dallas 2016, pet. denied). "A plaintiff can present evidence

concerning the reasonableness and necessity of past medical expenses through (1) expert testimony, or (2) an affidavit from the plaintiff's medical provider." *Id.*

First, Russell sufficiently supported an award for $7,850.00 in medical expenses by testifying that his injuries were caused by the car accident and providing evidence that his treatment was necessary and reasonable. *See* Dkt. No. 39 at 31-33. At the evidentiary hearing, Russell testified that, prior to the February 2017 car accident, Russell never had any problems with his neck or back, did not experience routine headaches, and did not receive any medical treatment for his neck or back. *See* Dkt. No. 39 at 10. But, immediately following the accident, Russell said he had daily headaches, difficulty sleeping, a continuous throb in his neck, and trouble moving his neck. *See id.* at 23-24. Russell provided an affidavit with his results from a cervical MRI which showed he had two tears in the discs in his neck, and he testified that his doctors said these tears were contributing to Russell's head and neck pain. *See id.* at 31-32. Russell also provided affidavits showing he had 18 chiropractor appointments after the accident, and he testified that these appointments helped him regain mobility in his neck so he could return to work. *See id.* at 33-34.

Russell's testimony and medical affidavits show that the car accident caused his injuries and his medical treatment was reasonably necessary to diagnose the problem and regain mobility. Accordingly, Russell is entitled to an award of $4,000.00 for his medical expenses from Baton Rouge Imaging and $3,850.00 for his medical expenses from Rathmann Chiropractic – totaling $7,850.00 for his medical expenses. *See id.* at 37.

Second, Russell provided sufficient evidence to support an award of $8,500.00 in lost wages. Russell testified that the pain in his head and neck made it extremely difficult to drive his vehicle for work as a truck driver. *See id.* at 33. He reported that he took off a month of work to regain mobility in his neck through chiropractic treatment and that, when he returned, he worked limited hours to accommodate his pain. *See id.* at 33-34. Russell reported that he lost $8,500.00 in wages during that time and was denied compensation in the form of disability or insurance proceeds. *See id.* at 34-36. As nothing in the record refutes this evidence, Russell's testimony is sufficient to support the award for $8,500.00 in lost wages resulting from the car accident.

Given his medical costs and lost wages, Russell is entitled to a total of $16,350.00 in economic damages.

B. Non-economic Damages

Russell also provided sufficient evidence to support an award for $35,000.00 in non-economic damages for pain and suffering and physical impairment. "Non-economic damages include compensation for pain, suffering, mental anguish, and disfigurement." *Golden Eagle Archery*, 116 S.W.3d at 763. Non-economic damages also include physical impairment, which encompasses "loss of enjoyment of life," the effect of which "must be substantial and extend beyond pain, suffering, mental anguish, lost wages or diminished earning capacity." *Id.* at 772.

First, Russell provided sufficient evidence to support an award for pain and suffering. "Evidence of past pain ... may be proven through a plaintiff's testimony or

other evidence, including circumstantial evidence." *Ten Hagen Excavating, Inc.*, 503 S.W.3d at 487. To determine whether evidence supports an award for pain and suffering, the Court must "not ignore uncontroverted evidence of injury." *Monroe v. Grider,* 884 S.W.2d 811, 820 (Tex. App. – Dallas 1994, writ denied). Texas courts have found that testimony regarding four months of neck pain, back pain, and headaches resulting from a car accident was sufficient to support an award for pain and suffering. *See Ten Hagen Excavating, Inc.*, 503 S.W.3d at 494 (holding that $150,000 would fairly and reasonably compensate plaintiff for past physical pain and mental anguish); *see also Transp. Concepts, Inc. v. Reeves*, 748 S.W.2d 302, 305 (Tex. App. – Dallas 1988, no writ) (holding that an award of $25,000 was sufficient to compensate for pain and suffering from a car accident).

Russell provided uncontroverted evidence of injury by providing affidavits of his MRI showing he had two torn discs in his neck. *See* Dkt. No. 39 at 31-32. He also gave detailed testimony regarding his head, neck, and back pain, calling it a "constant" and "throbbing" pain that affected his ability to sleep, work, and spend time with family. *See id.* at 26-28. Russell presented further circumstantial evidence of this pain by providing an affidavit with Rathmann Chiropractic's referral to a pain management doctor. *See id.* at 25-26. Russell's detailed testimony and accompanying affidavits support an award of noneconomic damages for pain and suffering.

Second, Russell provided evidence to support an award for loss of enjoyment due to his physical impairment following the car accident. Russell testified that before the car accident, he enjoyed going on vacations with his children, working on cars,

golfing, and mowing the lawn. *See id.* at 21-22. But Russell said that after the accident, his neck pain forced him to stay in bed and prevented him from wanting to do anything. *See id.* at 32. He testified: "I had to postpone basically my life, I had to stop. I couldn't do anything. Spend time with my kids. Nothing personal. No hobbies." *Id.* at 28. His constant neck pain also prevented him from driving, which forced him to cancel trips with his daughters and prevented him from visiting his daughters. *See id.* This testimony is sufficient to show that Russell is entitled to noneconomic damages from physical impairment encompassing loss of enjoyment of life.

While Russell provided evidence of physical impairment and pain and suffering, his testimony does not sufficiently support an award in the category of mental anguish. Mental anguish is "'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.'" *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) (quoting *J.B. Custom Design & Bldg. v. Clawson*, 794 S.W.2d 38, 43 (Tex. App. – Houston [1st Dist.] 1990, no writ). Texas courts have granted an award for mental anguish when the Plaintiff presents evidence describing "the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine." *Parkway Co.*, 901 S.W.2d at 444. But Texas courts have not awarded damages for mental anguish when plaintiffs present evidence of "mere emotions" or resulting "friction" in a relationship. *Id.* at 445. In the context of damages resulting from a car accident, Texas courts have found sufficient evidence of mental anguish when the plaintiff recounts that the accident itself was traumatic, there was considerable damage to the car, and

there was a perceived threat of danger at the scene. *See Ten Hagen Excavating, Inc.,* 503 S.W.3d at 488 (finding mental anguish when the plaintiff's father was trapped in the car, there were "disturbing pictures" of damage to the car, and bystanders warned Plaintiff that the car might explode).

Russell failed to provide evidence that his negative emotions resulting from the accident rose to the level of mental anguish. Russell did not testify that the accident itself was traumatic but instead reported negative emotions resulting from his injuries, such as feeling "horrible" for cancelling a trip for his daughter's birthday and experiencing "friction" with his daughters' mother. *Id.* at 28-29. Since Russell did not explain the severity of these emotions nor how they disrupted his daily routine, they do not rise to a level of compensable mental anguish.

Russell is entitled to noneconomic damages for his pain and suffering and physical impairment but not for mental anguish. The undersigned finds that an award in the amount of $35,000.00 is reasonable to compensate Russell for his combined noneconomic damages suffered as a result of the February 2017 car accident.

C. Court Costs

Additionally, Russell provided sufficient evidence to support an award for court costs totaling $1,198.93. These court costs include: (1) filing and service fees, which total $686.90, and (2) three fees for Depositions on Written Questions, which cost $256.38, $123.12, and $132.53. *See id.* at 44-45. "Unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be

allowed to the prevailing party." FED. R. CIV. P. 54. "Taxable court costs include: (1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of the deposition transcript; (3) printing costs and witness fees; (4) fees for copies of papers necessarily obtained for use in the case; (5) certain docket fees; and (6) compensation of court appointed experts and interpreters." *Geiken,* 2017 WL 1709692, at *10. The "Supreme Court has indicated that federal courts may only award those costs articulated in section 1920 absent explicit statutory or contractual authorization to the contrary." *Cook Children's Med. Ctr. v. New England PPO Plan of Gen. Consolidation Mgmt.*, 491 F.3d 266, 274 (5th Cir. 2007).

First, Russell's filing and service fees totaling $686.90 are recoverable under Section 1920, because they fall under the enumerated cost of "fees paid to the clerk and marshal." *Geiken,* 2017 WL 1709692, at *10.

Second, Russell's fees for Depositions on Written Questions are also recoverable, because they were necessarily obtained for use in determining damages. "The trial judge has great discretion to tax the cost of a deposition if ... [it] was 'necessarily obtained for use in the case.'" *Nissho-Iwai Co. v. Occidental Crude Sales*, 729 F.2d 1530, 1553 (5th Cir. 1984) (quoting 28 U.S.C. § 1920). Here, the depositions of Russell's medical records and billing records were necessarily used to determine Russell's medical damages and are thus taxable costs under Section 1920.

While Russell also sought to recover a mediation fee of $850.00, *see* Dkt. No. 39 at 44, this fee is not recoverable under Section 1920. The Fifth Circuit has held that "mediation fees are not explicitly authorized by § 1920," *Cook Children's Med.*

*Ctr.*, 491 F.3d at 277, because "mediators lack the essential characteristics of court appointed experts," *id.* at 276. Therefore, Russell cannot recover his mediation fee.

The Court should award Russell as court costs the expenses that he incurred for filing and service fees and Depositions on Written Questions, which total $1,198.93.

D. <u>Prejudgment Interest</u>

Russell is also entitled to prejudgment interest on his damages award. Generally, "[p]rejudgment interest should apply to all past injuries, including past emotional injuries." *Thomas v. Tex. Dep't of Crim. Justice*, 297 F.3d 361, 372 (5th Cir. 2002). Prejudgment interest is compensation allowed by law as "additional damages for lost use of money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998). "Under Texas law, prevailing parties receive prejudgment interest as a matter of course." *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1329 (5th Cir. 1994).

"[I]n diversity cases, ... pre-judgment interest is calculated under state law." *Bos. Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002). In Texas, "[t]he prejudgment interest rate is equal to the postjudgment interest rate applicable at the time of judgment." TEX. FIN. CODE § 304.103. The postjudgment interest rate is "five percent a year if the prime rate as published by the Board of Governors of the Federal Reserve System ... is less than five percent." TEX. FIN. CODE § 304.003(c). Under the Texas Finance Code, "prejudgment interest accrues on the

amount of a judgment during the period beginning on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed and end[s] on the day preceding the date judgment is rendered." TEX. FIN. CODE § 304.104; *see also Dallas Cty. v. Crestview Corners Car Wash*, 370 S.W.3d 25, 50 (Tex. App. – Dallas 2012, pet. denied) ("Prejudgment interest is calculated up to the date of judgment and is then included as part of the final judgment.").

Currently, the prime rate is 3.25 percent which is less than five percent. Accordingly, the prejudgment rate that the court will apply is five percent per annum.

Russell is entitled to recover prejudgment interest on the damages claims on which he prevailed. Therefore, Russell can recover prejudgment interest at a rate of five percent per annum for the time period between the date the lawsuit was filed until the day before the District Court enters judgment.

E. Postjudgment Interest

Russell is also entitled to postjudgment interest on the amount of his judgment. "The postjudgment interest rate for judgments in federal courts is governed by federal statute, 28 U.S.C. § 1961(a)." *Hall v. White, Getgey, Meyer Co.*, 465 F.3d 587, 594 (5th Cir. 2006). "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C.A. § 1961 (West 2000). "This circuit has required that post-judgment interest at the federal rate be assessed against the pre-judgment interest." *Bos. Old Colony*

*Ins. Co.*, 288 F.3d at 234. Accordingly, a postjudgment interest rate of .114 percent per annum should be applied to the total judgment.

### Recommendation

For these reasons, the Court should grant Plaintiff's Motion for Default Judgment [Dkt. No. 27] and enter judgment in favor of Plaintiff in the amount of $51,350.00 in damages plus prejudgment interest calculated at a rate of five percent per annum. Postjudgment interest shall accrue on the total amount of the judgment awarded to Plaintiff at the applicable rate of .114 percent per annum from the date of this judgment until it is paid in full. The Court should also award Plaintiff $1,198.93 in court costs, which include service fees, filing fees, and Depositions on Written Questions.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     DATED: December 4, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE